husband, the exact nature of which is not disclosed, which led her to believe that her husband would send the sum of $10 per month to her father. In order to make certain that her father would receive the said amount for at least a part of his life, she desired to make some provision out of her own estate, and as she could not tell how much money might be required, because that would depend upon the length of life of her father, and upon whether or not her husband made payments, the testatrix fixed upon an arbitrary sum of $400, which amount, with such interest as might accrue thereon, the executrix, Lina Letzter, was to pay to the father of the testatrix in monthly payments of $10 each whenever the testatrix's husband failed to pay the same. I further believe that her intention was that upon the death of her father the said $400, and any interest thereon, or so much thereof as remained in the hands of the executrix after making the payments referred to, should be divided between Fanny and Helen Heller.

The above being my understanding of the intent of the testatrix, I construe the clause quoted as a bequest in the sum of $400 to Lina Letzter, the executrix, in trust, nevertheless, to hold the same during the life of Marcus Frey, the father of the testatrix, and to pay to her said father out of the said amount and the interest that may accrue thereon the sum of $10 per month, whenever the husband of testatrix shall fail to make such a monthly payment of $10 to him, until the said sum of $400 and accrued interest thereon shall have been paid to said Marcus Frey, and upon the further trust, upon the death of said Marcus Frey, to pay to Fanny and Helen Heller, share and share alike, the said sum of $400 and accrued interest, or so much thereof as shall remain in her hands after making the payments, if any, to Marcus Frey, as above stated.

Decreed accordingly.

(86 Misc. Rep. 176)

### In re KINGS COUNTY TRUST CO.

(Surrogate's Court, Kings County. June, 1914.)

1. EXECUTORS AND ADMINISTRATORS (§ 216*)—ATTORNEY'S FEES—ALLOWANCE.
   That the increase of the estate of decedent, secured from the estate of decedent's father by the services of attorneys employed by the executor, was no greater than the amount which the beneficiaries under the will would have received as beneficiaries under the will of decedent's father had such increase not been secured, could not deprive the attorneys of their right to an allowance for fees.
   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 757; Dec. Dig. § 216.*]

2. TRUSTS (§ 1*)—OBJECT AND NATURE.
   The first object of a trust is to limit the powers of the beneficiary and deprive him of any power to dispose of and manage the trust.
   [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 1; Dec. Dig. § 1.*]

3. ATTORNEY AND CLIENT (§ 140*)—ATTORNEY'S FEES—CONTRACT—CONSTRUCTION.
   Under an executor's contract with attorneys, providing that "if upon increasing the said estate, the said executor cannot agree as to the amount of compensation to which they may then reasonably be entitled, that the

matter shall be submitted to the court for   *   *   *   the fixing of a proper compensation," the attorneys were entitled to receive for successful services such compensation as should be reasonable in view not only of the circumstances generally but of the fact that the fee was contingent.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 336–349; Dec. Dig. § 140.*]

4. ATTORNEY AND CLIENT (§ 141*)—FEE—AMOUNT—EXECUTORS AND ADMINISTRATORS.

A counsel fee of $47,600 for services which were rendered at the instance of an executor and resulted in the recovery of $346,974.09 from the trustees under the will of decedent's father was not unreasonable.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 347; Dec. Dig. § 141.*]

5. ATTORNEY AND CLIENT (§ 153*)—ATTORNEY'S FEES—OBJECTION TO ALLOWANCE—EXECUTORS AND ADMINISTRATORS.

Where the contract between an executor and three attorneys was for an entire fee payable only in case of success in litigation, the fact that one attorney became a Supreme Court justice while the litigation was undetermined did not require that one-third of the fee paid by the executor to the attorneys on successful termination of the litigation be disallowed.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 299, 300; Dec. Dig. § 153.*]

Judicial settlement of the account of Kings County Trust Company, as executor and trustee of Mary Elizabeth Lewis, deceased. Account approved as stated.

See, also, In re Lewis' Estate, 149 N. Y. Supp. 127.

George V. Brower, of Brooklyn (William P. Maloney, of New York City, of counsel), for accountant.

Evarts, Choate & Sherman, of New York City (Joseph H. Choate, Jr., and Thomas T. Sherman, both of New York City, of counsel), for objectants John A. Lewis, Rosetta L. Hodgman, and Marion L. Quinn.

Horwitz & Rosenstein, of New York City, for objectants Herbert D. Lewis and Fannie D. Lewis, as administratrix of Thomas Lewis, deceased.

KETCHAM, S.  [1] An issue is made as to the propriety of the payment by the accountant of $47,600 for counsel fees.

The services for which that sum was paid resulted in the recovery from the trustees under the will of the decedent's father of $346,974.09. They were rendered under a contract between this accountant and three attorneys, which provided that the compensation of counsel should be contingent upon their success in increasing the estate of the decedent, and further stipulated as follows:

"And if upon increasing the said estate the said executor cannot agree as to the amount of compensation to which they may then reasonably be entitled, that the matter shall be submitted to the court for its determination, and the fixing of a proper compensation."

It was also agreed that the compensation so payable should be equally divided among the counsel so retained.

The objectants not only are beneficiaries under the will of the decedent, but are also beneficiaries under the will of the decedent's father. Their interests under the father's will were such that, if the fund re-

covered as aforesaid had been found not to belong to the estate which is the subject of this accounting, they would have received by the father's bounty sums substantially equal to those which they now receive from this estate, less the expense of collecting and administering the fund. They thereupon argue that the endeavors of the accountant to obtain the fund were selfish and injurious and that the value of the services rendered in furtherance of such endeavors should not be based upon the amount of the recovery.

Of course, it was the duty of the accounting executor to assert his claim to these moneys, and, in the light of final success, it was still in the path of duty when, after an adverse judgment, it pursued its claim to the Court of Appeals. Equally, of course, its persistence (since the end crowns the work) should not be rebuked because the beneficiaries of its act forbade its continuance in duty.

[2] The first object of a trust is to confine and disappoint the beneficiary as to the disposition and management of the trust. If it were not intended to exclude him from interference or suggestion with respect to the corpus of the trust, no trust would be made.

As it turned out, these beneficiaries never had and never could have had any lawful right to any part of the fund which is now in part reduced to their enjoyment if the accountant had not secured it. Since the conduct of the accountant was right, there can be no rule applicable to a like recovery from a stranger under like doubts and difficulties which will not equally control in this case.

[3] The contract of retainer, construed most favorably for the objectants, contemplated that the counsel should receive for successful services such compensation as should be reasonable in view not only of the circumstances generally but of the contingency that they would be without recompense if their services were without value. True, it was agreed that the compensation should be fixed by the client, but that stipulation, whatever might be its effect between the parties, left for the court the determination whether, by the standard stated supra, the amount paid was fair.

[4] It is found without hesitation that the services were reasonably worth the sum paid.

[5] Among the suggestions against this item, it is claimed that at least one-third thereof should be disallowed, since one of the gentlemen to whom such one-third was paid became a Supreme Court justice while the litigation was undetermined.

The contract was for an entire fee payable for success in the litigation. It might have been defeated for failure of consideration, but the disability of one of the counsel, though conceivably it might have wrought such failure, cannot bring about that result in a course of service where there was nothing to be obtained which was not recovered. Since the contract was fulfilled, and the fee was earned, neither the accountant nor those whom he represented were concerned with its disposition.

The account as stated is approved.

Decreed accordingly.